Case is United States v. Joe, No. 18-2072. Counsel? May it please the court. Good morning, counsel. My name is Devin Fuchs. I represent the appellant, Charlie Joe, in this matter. Your Honors, Jonathan Joe was not unusually vulnerable as a matter of law. While he was partially paralyzed on the left-hand side of his body, he did not fall within that category of individuals who require additional protection. On the day that Mr. Joe died, he started a fight with his brother, the defendant, Charlie Joe. He punched him in the mouth, eyes, and nose, while Charlie Joe was sitting down, drunk, and stricken with cataracts, and thus had blurry vision. Jonathan Joe had previously engaged in a years-long campaign of physical and mental warfare against his brother, which sent Charlie Joe to the hospital on at least one occasion in 2015, when Jonathan Joe struck him over the head with a two-by-four. Jonathan Joe was exceptionally capable. He chopped wood for his fireplace. Those close to him said that he went through life as though he had the use of all of his facilities. His sister, Lula Jackson, who spoke during the sentencing hearing, stated that Mr. Jonathan Joe went through life like he had two hands. But the government wants you to believe that, based on the fact that Jonathan Joe was paralyzed on the left side of his body... But he didn't have two hands. No, but he went through life like he did. I understand, but he didn't have two hands. He was paralyzed on his left side. That is absolutely correct, Your Honor. And are you taking the position that if someone can perform daily activities, that that person can never be a vulnerable victim? In some circumstances, they can. My point is simply that the facts of this case don't show that. In this case, we have ample evidence on the record, which the court and, respectfully, counsel disregard, indicating that even though he was paralyzed on his left side, he did not fall within that group of people. Well, doesn't part of the analysis turn on the manner in which the offense was committed? For example, would it make a difference to the vulnerable victim analysis if Mr. Joe had poisoned Jonathan instead of striking him on the paralyzed side of his body? That's a good question, and I struggle with that myself. Or another example would be if, say, Mr. Jonathan, or excuse me, Charlie Joe, had simply shot Jonathan Joe instead. It's the same thing. Would he be considered vulnerable? And to answer the court's question, in this situation, it's a little bit odd, because there's no evidence on the record which indicates that Charlie Joe targeted Jonathan Joe on the left side because of the paralysis. We do not know, in fact, and there's nothing on the record which actually tells us when Charlie Joe allegedly struck Jonathan Joe. Well, except there were blows to the left side. Sure, and there's a couple different… …that the blows to the left side were intended to be blows to the left side. You could infer that. You could also infer that Charlie Joe was simply right-handed, and that's the way he batted. You could also infer that perhaps, since the evidence did show that there was blood on the ground, that Jonathan Joe had fallen down on his right side, and therefore his left side was the only side that was available. So when we talk about the facts that are currently before the court, Your Honor raises a good point, and that is the reason for the appeal. And that reason is that there are no facts other than the fact that Jonathan Joe was paralyzed on the left-hand side of his body, which support the notion that he was a vulnerable victim. Excuse me, I should say unusually vulnerable. In fact, what the court has done, and as this court knows, you can't simply look at the class of person when determining whether or not an individual is, in fact, unusually vulnerable. But that's exactly what the district court did, and that's exactly what counsel for the government asked you to do again. In other words, the government looked at the fact that Mr. Jonathan Joe had cerebral palsy and put him in that class of individuals with cerebral palsy and said that he was vulnerable because he was paralyzed on the left-hand side. The class of individuals, the way that this court should analyze whether or not someone's unusually vulnerable is to look at what the actual disability is. The actual disability isn't that Mr. Joe suffers from cerebral palsy, Jonathan Joe that is. The actual disability is that Jonathan Joe was paralyzed on his left side, and whether or not that alone could make him a vulnerable victim. And we submit that it does not. That mere membership in that class does not necessarily make Jonathan Joe a vulnerable victim. How does your argument square, though, with our, and I'm struggling with the name of this case, but it appears to be tisnolthos. Does that sound familiar? Yes, Your Honor. 71-year-old man with a deformed hand who walked with a limp, and we found that he was a vulnerable victim. And it seems like similar physical characteristics to the victim in this case. I mean, he has a bad hand, a bad leg. Walked with a cane, I think, is what it said. And they said, you know, we'd never find that just because he was older that he was vulnerable, but he had these ailments. And it sounds a lot like the victim in this case. How does your case square with that? Well, in a couple different ways. When we talk about the ability of the individual, the victim, we know from the record that even though Jonathan Joe did suffer from that malady, which is similar to the malady in, the name is tough, tisnolthos. You know the case. I know the case. It's similar, but we know from the record that Jonathan Joe, he wasn't to say, he went through life like he had two hands. He chopped wood. He hit his brother with a two-by-four. He struck his brother three times before the fight really got going. We know that Jonathan Joe had his own farm that he participated in taking care of. So, yes, in that case that your Honor refers to, the maladies are the same. But the problem, the distinction, both the distinction and the problem with this case, the Joe case, is that there is no consideration of these other things that Jonathan Joe could do. And that's the difference. And also, go ahead. And also, I would point out, and this leads me to another point. In that case, the court stated that although the focus of the vulnerable victim enhancement must be on the particular traits of the victim, information about a defendant may be relevant in assessing the victim's vulnerability. That's something else that took place. And I think that that's something that was disregarded by both the court and by my esteemed counsel in this case as well. Right. So now we're on to the part where you're arguing that your client had ailments of his own, that maybe there's a comparative vulnerability argument. That's true. And I noted in the government's response brief, they claim that the defense is trying to kind of turn this on its head and say that, well, just because Mr. Charlie Joe was vulnerable, that the enhancement shouldn't apply. That's really not the argument. The argument is that when assessing an individual's vulnerability, it makes sense to also consider the ability of the alleged defendant as well. So, for example, if an individual is 5'2", but a trained boxer, he could still be vulnerable if the person that he's going up against is 6'4 and weighs 250. You want to take that into account. It makes sense to take that into account. You should take that into account. But the court didn't. And we have a similar situation here. Do you think you sufficiently raised this below at the district court, this argument about the comparative vulnerability? Yes. Okay. And so tell us if you've got it on the top of your head, where did you raise that? I mean, I saw like one paragraph about it maybe in your sentencing memorandum. Oh, I'm sorry. I'm sorry. I misunderstood. No, I'm not saying you didn't argue it here. I can't recall. But certainly that goes into the analysis as to whether or not there's enough evidence before the court to sustain the two-level enhancement. And when you consider that, Mr. Charlie Joe's deficiencies were significant. As I stated before, he was seated. He was drunk. He suffered from cataracts. All this is in the record. Could I just ask you, though, where you find any support for this argument in the guideline or the guideline notes that a court is supposed to consider the characteristics, if you will, or the deficiencies of the defendant in determining whether the victim is an unusually vulnerable victim? It's not there. It's not there. But there's cases that support this notion. Well, that's my next question. Okay. Because the example you gave was an example where the defendant is, you know, the 6'4", is much stronger than the victim. But that isn't what your argument is here. Your argument here is that Mr. Joe's deficiencies were so significant that you should take those into account and compare those with the victim. And my question is whether there's any case that has ever done that that you've been able to find. In that scenario, no. I don't have a case that I can put before the court that says, hey, this is a situation where the court looked at precisely the defendant's abilities and compared them to the victim in the manner that Your Honor suggests. But why wouldn't one want to consider that? Why wouldn't one want to consider the totality of the circumstances when deciding whether or not that enhancement applies? And, Your Honor, as stated in the briefs that I submitted to the court, in United States v. Amadeo, which is an 11th Circuit case, but still makes the same argument, and it states that applying this enhancement is highly fact-specific and must take into account the totality of the circumstances. And along with that, in the 10th Circuit in the United States v. Chikora, the court stated that although the focus of the vulnerable victim enhancement must be on the particular traits of the victim, again, information about a defendant may be relevant in assessing the victim's vulnerability. So there is at least some acknowledgment on behalf of this court that that's something that should be taken into account. Would you acknowledge that the victim here, Jonathan, would have been better able to defend himself against an axe attack if he weren't paralyzed on his left side? I don't know. I don't know if anyone can really, I mean, with an axe. I wouldn't agree to that. I would not stipulate to that. The axe is an overpowering force. I suppose maybe he could put an arm up, but once someone starts swinging an axe, I don't think that anything this side of a shield is going to really protect that individual. How about in general? Let's venture into more dangerous territory. How about in a more general sense, would you agree that someone with cerebral palsy that is paralyzed on one side is less able to defend themself? Well, they might be somewhat less able, but the question is whether or not they're unusually vulnerable. And an axe is a great equalizer. But we threw the axe out. We're just talking in a general sense. It depends on the individual. You have to analyze that individual's, his own personal deficiencies and determine whether or not those deficiencies make the individual. I've got another question for you real fast. Sure. So it seems in your briefing that one of the things you're talking about is the idea that the victim here had a propensity to violence himself and had previously hospitalized your client by hitting him in the head with a two-by-four. And I think maybe even on the day of this attack, had already attacked your client, beating him up fairly, maybe not severely, but punching him and stuff like that. Do you think it makes a difference? Do you have a case that says it makes a difference if the victim provoked the act? No. I don't have a case that says that. But when we talk about an individual's relative disability and also whether or not the defendant himself knew or should have known that the victim was vulnerable, I think those facts become incredibly relevant. From Charlie Joe's point of view, Jonathan Joe was not vulnerable. There's no reason that he should know that he was vulnerable. Sure, did he know that he had. . . Is that a swamp you want to get into? Because he certainly knew on what side he was paralyzed, which was the side of the injuries. I mean, that's part of the swamp. Yeah. I don't know if I want to wade into there, but let me put my waders on and walk ahead anyway. Good idea. When we talk about whether or not Mr. Joe, Charlie Joe, knew or should have known that Mr. Jonathan Joe was vulnerable, from Charlie Joe's point of view, Mr. Jonathan Joe was fit. He saw Jonathan Joe working the farm. He saw Jonathan Joe strike him three times and then eye, nose, and mouth. He saw Mr. Jonathan Joe hit him with a two-by-four in the past. So when we talk about whether or not Charlie Joe knew or had reason to know that Mr. Jonathan Joe was vulnerable, well, from Mr. Charlie Joe's position, he seemed pretty daggone able. So with that being said, Your Honor, I see my time is up, unless you have any other questions. Thank you, counsel. Thank you, Your Honor. Counsel. Good morning. May it please the court. Counsel. My name is Jennifer Rizzoni, and I'm an assistant United States attorney down in Albuquerque, New Mexico. The district court properly applied the vulnerable victim two-point enhancement in this case. It made the particularized findings that it needed to make. It found that not only did Jonathan Joe suffer from cerebral palsy, but cerebral palsy affects people in different ways, and in particular, Jonathan Joe was paralyzed on the left side of his body. In that, it then looked at the crime in this case, wherein the defendant had struck his brother numerous times on the left side of his body, the side of his body that Jonathan Joe was paralyzed on. What was the evidence about whether he struck him on the side that he could use? So in looking at the autopsy report, which is a part of the record, all of the strikes, axe strikes, were on the left side of Jonathan Joe's body. So that is, he took advantage to the extent that he could. He took advantage of the fact that Jonathan Joe was paralyzed on that side, or a reasonable inference could at least be made that he did that. By the way, is that a showing that the guideline requires? Not just that the defendant knew about the vulnerability, but took advantage of the vulnerability? The guideline doesn't necessarily provide that. That's why I'm asking. I don't see that in there, but it seems as though that's implicit. Yes, and that would be the argument the government is making here, is that he took advantage of the fact that that was his vulnerable side, and therefore struck him on that side. Did the district court make that as a finding? That he took advantage? No, that was not part of the district court's finding. However, it pointed out that he was in fact paralyzed on that side of his body, and in fact the majority of the blows, and actually if you look at the autopsy report, all of the axe blows were to the left side of Jonathan's body. That all being said, going back to one of the questions I believe that you asked my opposing counsel, I thought a lot about the fact that this was an axe, and what even the most healthy of persons, whether they could have defended themselves against that. I do not believe that the vulnerability of a victim should be linked to the severity of the assault, because if that were the case, then the more severe the assault, the less able even the able-bodied person could be to defend. Well, counsel gave the example of, what if it had been a shooting? Right. And the bullet hit the left side. Right. And I think actually that might be, that could be a different situation. This is a crime wherein you look, essentially in some way this court decided that it has to be some characteristic that renders a victim particularly susceptible to the criminal conduct. And here we have the defendant wielding an axe against his brother who suffers from cerebral palsy, who is paralyzed on the left side of his body, and he is particularly susceptible on the left side of his body, and therefore the defendant strikes him on the left side of his body. So I think it would be a different situation, in fact, if you did have a firearm and you shot someone. Was the evidence that Jonathan had successfully strengthened himself to compensate and was able to go about his daily activities and be quite vigorous in doing so, is that relevant to the analysis? You can certainly take that into account in terms of what the victim could or couldn't do, but there's no dispute that he was paralyzed. It's wonderful that he was able to overcome some of his hardships as a result of the condition that he suffered from, but it doesn't negate the fact that he was paralyzed on the left side of his body. It's good that he was able to use the right side of his body, but there's no dispute that he was, in fact, disabled in this way. So the fact that he could make it through life, that he could chop wood, perhaps, I presume, with his right side, that's great. But that also doesn't make him able to necessarily defend from an attack. Well, I mean, the record shows that he was able to attack, though. Again, with his fist. Right. With his fist, yes. And I'm not going to dispute the fact that this was definitely not a one-sided fight. However, he struck him however many times, and then the defendant picked up an axe and hit his brother numerous times on the side of his body that he knew was vulnerable. So did the record show whether the defendant was right-handed or not? That I do not have the answer for you at this point. Because a righty swinging an axe, as your opposing counsel pointed out, would naturally be hitting the left side of the victim. It wouldn't necessarily show an intent to hit the more vulnerable side. Well, I think you need to look at all of the facts. So let's accept that he was right-sided. Every single strike was to the left side of Jonathan Joe's body. I think you can reasonably infer that he was striking the side of him that was vulnerable. So do you think it matters that the defendant had disabilities of his own? In this case, Your Honor, I do not think it does. In fact, in all of the cases that I was able to find, when you did take into account the status of the defendant, like, for instance, in Chakora, it was in relation to how much more vulnerable it made the victim. So in Chakora, for instance, you had a victim who was very, very small, and you had these four men who assaulted him and eventually killed him who were much bigger. So they took into the stature, for instance, of the defendants in that case. There's no case that I was able to find, and I think my colleague also wasn't able to find, a case in which it diminished the vulnerability of the victim, if that makes any sense. But did Chakora's reasoning limit the analysis in that way, or did it acknowledge that the conditions or capabilities of the defendant can be taken into account, whether it's because the defendant has particular strengths or has particular weaknesses? Chakora did not distinguish it that way. What Chakora said, that information about a defendant may be relevant in assessing a victim's vulnerability, and in Chakora, it did it in the way that I just described. And I wasn't able to find another case where it did it in the way that counsel wishes for. The phrase, totality of circumstances, has been thrown about a bit in this case. That seems to suggest that you would consider the defendant's conditions. Except the totality of circumstances standard is one that's argued by defendant, and there is no case law to support that type of analysis, at least thus far. So they don't use that term. So you don't think that's the yardstick? I do not. I do not. At least none of the cases that I've been able to find look at it that way. Without sole focus on the vulnerable victim enhancement, is there any place in the sentencing protocol to consider the disabilities of the defendant? In actual sentencing guidelines, as opposed to 3553A factors? When district judge sits up there and pronounces a sentence, who's considering it, there's a protocol. You go through and you look at things like the victim enhancement, and you come up with numbers. You apply them and then you come up with a range. Ultimately, you sentence the defendant. Okay. Is there any place in that protocol to consider the disabilities of the defendant? At this moment, in terms of the sentencing guidelines, I don't know off the top of my head. However, when you get to 3553A factors, certainly the court could take that into account. And did the court do so here? No, it did not. All right. The same question is to a self-defense. You haven't pleaded guilty, so it's not saying I'm not guilty. But they're saying I deserve a break in sentence. Is there a place in the sentencing protocol for that to be considered by the district judge? Again, I think that would come when you're working under 3553A. If for some reason the court felt that there was some justification, obviously this is a voluntary manslaughter case, so in the heat of passion, that is the justification for the murder or the homicide at that point. So if the court felt like there needed to be more of a variance because of that, perhaps, but I don't. There was no expression by the district judge of that? No. No, there was not. The district judge, however, did impose the low end of the range, right? He did. He did. And as we noted, if the court were to remand this, it would not be harmless, because that range would reduce by about 13, 14 months. Now, would 78 still be within the range without the vulnerable victim enhancement? The 78 months would be the top of the range without the enhancement. Thank you. Now, you've indicated that our review is de novo? It is, in that it was objected to down below, and they're not disputing any of the factual assertions. All right. And the showing needs to be a preponderant showing at this point? Correct. Correct. Thank you. Let me drag you back into the consideration of the defendant's maladies in this. And this isn't the defendant. It's going to be the hypothetical person. What do you think about what if you had another person who was paralyzed on one side and they attacked the victim in this case and killed him and did the same thing? It was on his paralyzed side with an ax? That's funny. That hypothetical, as I was sitting here, actually, I was thinking about if you had the same exact characteristics in the defendant as you did in the victim. And I think the purpose of these two points is to characterize the victim for what they are. And regardless of what the defendant may or may not suffer from, this is to protect the victim, the person who's particularly susceptible to the crime that is committed. And in this case, the victim was particularly susceptible on the left side of his body, and the defendant took advantage of it, regardless of the defendant having suffered from CP or been drunk or suffered from cataracts or whatever other malady. Right. So do you think that your victim in this case, as a matter of law, was vulnerable under the guidelines? Given the factual situation here, he was. Okay. Given the crime that was committed. And, again, I go back to some way because it renders a victim particularly susceptible to the criminal conduct. So you have to look at the criminal conduct. Right. Agreed. Okay. If there are no other questions, Your Honors, I would just ask that you affirm the district court's decision and the sentence in this case. If there's no other argument, I think we're done. I'm done. All right. Thank you. I think we've used all your time. Is that right? That is correct. Okay. So the case will be submitted and counsel are excused. Thank you very much. Thank you.